## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

IN RE:

**STEVEN HERBERT LARSEN and
LEANNE LOUISE LARSEN,**

    **Debtors.**

**Case No. 23-20027-NGH**

**Chapter 13**

## MEMORANDUM OF DECISION

Before the Court are an Amended Motion to Dismiss, Doc. No. 37, filed by C.

Barry Zimmerman, the chapter 13 trustee[1] (the "Trustee"), and a Motion to Dismiss with

Prejudice, Doc. No. 22, filed by creditors Homes and Neighborhoods, LLC and Copper

River Funding LLC (collectively the "Creditors").  Creditors and Trustee both seek

dismissal of the above captioned case with a bar to refiling.  The matter was tried on May

31, 2023, after which the Court took the issues under advisement.  The Court has now

considered the testimony and evidence presented, the briefs and arguments of the parties,

and the applicable law.  This Memorandum contains the Court's findings of fact and

conclusions of law.  *See* Rules 9014 and 7052.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11
U.S.C. §§ 101 – 1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules
1001 – 9037.

MEMORANDUM OF DECISION - 1

**BACKGROUND**

Prior to this bankruptcy, Homes and Neighborhoods, LLC loaned funds to Mountain Air Resort LLC ("Resort").[2] That loan was secured by two parcels of real property located on Dodd Road in Hayden, Idaho (the "Real Property"). At some point, Resort quitclaimed the Real Property to Steven and Leanne Larsen ("Debtors"). After the loan went into default, Creditors initiated a judicial foreclosure action in Idaho State Court in the First Judicial District, Kootenai County (the "State Court") resulting in a $1,750,000 money judgment against Resort in favor of Creditors and a determination that Resort's interest in the Real Property was foreclosed and the Real Property should be sold by the sheriff in satisfaction of the judgment. Ex. 200.

Thereafter, on August 10, 2021, Debtors filed a chapter 7 bankruptcy petition. *In re Larsen*, Case No. 21-20316-NGH (the "First Bankruptcy"). Debtors filed the First Bankruptcy with the assistance of bankruptcy counsel. That relationship ended, however, shortly after the chapter 7 trustee sought approval to sell the Real Property. Debtors elected to represent themselves, *pro se*, and sought to convert the First Bankruptcy from chapter 7 to chapter 11. The Court denied Debtor's motion to convert, but in the process, the chapter 7 trustee's buyer withdrew the offer to purchase the Real Property.

Debtors received their chapter 7 discharge on January 4, 2022. *See* Case No. 21-20316-NGH at Doc. No. 57. The chapter 7 trustee administered the estate without selling the Real Property, filed a notice of final report on November 9, 2022, and a final account

---

[2] The Court takes judicial notice of its files and records in this case, Case No. 23-20027-NGH, pursuant to Fed. R. Evid. 201, and the files and records in Case No. 21-20316-NGH and Case No. 22-20340-NGH.

MEMORANDUM OF DECISION - 2

and distribution report on February 27, 2023.  Thus, although the First Bankruptcy

appears to have been fully administered, it remains open to resolve a pending motion for

contempt filed by Debtors against Creditors.[3]

In the First Bankruptcy, Creditors sought stay relief to complete a sheriff's sale on

the Real Property.  Hearing on Creditors' stay relief motion was continued multiple

times, but ultimately, this Court held the automatic stay expired as to Creditors and the

Real Property on May 13, 2022.  *See* Case No. 21-20316-NGH at Doc. No. 154.

Creditors completed a sheriff's sale though the State Court on December 27, 2022.  Ex.

205.  Creditors immediately sought possession of the Real Property.

Creditors' efforts to evict Debtors from the Real Property were frustrated by

Debtors' next bankruptcy filing on December 30, 2022, *In re Larsen*, Case No. 22-

20340-NGH (the "Second Bankruptcy").  Debtors filed a *pro se* chapter 13 bankruptcy

petition.  Without the assistance of counsel, Debtors missed critical deadlines.  Debtors

did not timely file a chapter 13 plan as required by Rule 3015(b), and they did not appear

at the § 341(a) meeting of creditors.  Trustee moved to dismiss the Second Bankruptcy

based on Debtors' failure to prosecute the case.  Trustee also sought a 180-day bar to

refiling.  The Court dismissed the Second Bankruptcy on February 13, 2023, but it denied

the requested bar.  Case No. 22-20340-NGH at Doc. No. 31.

On February 15, 2023, two days after the Court dismissed the Second Bankruptcy,

Debtors filed another *pro se* chapter 13 petition, initiating the above captioned case, *In re*

---

[3] On May 31, 2023, an evidentiary hearing was held on the contempt motion in the First
Bankruptcy.  A separate Memorandum of Decision will be entered addressing that motion.

MEMORANDUM OF DECISION - 3

*Larsen*, 23-20027-NGH (the "Third Bankruptcy"). Debtors scheduled the Real Property

with a value of $2,300,000 and listed Creditors as unsecured with a disputed claim for

$1,100,000. Doc No. 1. Debtors timely filed a plan, proposing plan payments of up to

$500 per month. The plan purports to be funded in part by anticipated proceeds from

lawsuits against Creditors for libel, slander, violation of the discharge injunction,

contempt of court, and the attempted murder of Steven Larsen. Doc. No. 2. Debtors

again failed to attend the first meeting of creditors. Doc. No. 31.

Pursuant to § 362(c)(3)(A) the automatic stay terminates 30 days after the petition

date if there was a prior bankruptcy case pending but dismissed within the preceding

year. Due to the dismissal of the Second Bankruptcy, Debtors sought to extend the

automatic stay as to the Real Property and Creditors in the Third Bankruptcy. The Court

ultimately denied this request. Doc. Nos. 28 and 50. The Court also denied confirmation

of Debtors' chapter 13 plan. Doc. No. 51.

**DISCUSSION AND DISPOSITION**

Creditors argue the case should be dismissed because Debtors are not qualified to

be Debtors in this bankruptcy case pursuant to § 109(g). Creditors and Trustee also argue

the case should be dismissed as a bad faith filing pursuant to § 1307(c) with a bar to

refiling of at least six months.

**A.    Eligibility under § 109(g).**

Section 109(g) provides in relevant part that:

Notwithstanding any other provision of this section, no individual . . . may
be a debtor under this title who has been a debtor in a case pending under
this title at any time in the preceding 180 days if—(1) the case was

MEMORANDUM OF DECISION - 4

dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case.

Under § 109(g)(1), if Debtors' Second Bankruptcy was dismissed due to Debtors' willful failure to abide by orders of the Court or to appear before the Court to prosecute the case, Debtors are ineligible to be Debtors in the Third Bankruptcy. Willfulness requires more than simple inadvertence or even reckless disregard for a debtor's duties. Courts have found that failing to attend a creditor's meeting or make plan payments are not, on their own, sufficient. *See Walker v. Stanley*, 231 B.R. 343, 348 (N.D. Cal. 1999) ("[A] mere failure to make a payment under a Chapter 13 plan or failure to appear at the first meeting or a court hearing, will not, in itself, be sufficient to sustain a finding of willful conduct.").

Here, Debtors represented themselves in the Second Bankruptcy. Navigating a chapter 13 bankruptcy without the aid of an attorney is difficult and fraught with peril not appreciated by someone with little to no bankruptcy experience. Indeed, it was apparent during the Second Bankruptcy that Debtors misunderstood the Court's deficiency notice and the interplay of the Bankruptcy Rules. While Debtors did not timely file a plan or attend a first meeting of creditors, the record does not permit the Court to determine those actions were attributed to willful failures, as opposed to inadvertence and unfamiliarity with the chapter 13 bankruptcy process. Thus, Creditors' request for dismissal based on lack of eligibility will be denied.

MEMORANDUM OF DECISION - 5

**B.      Dismissal under § 1307(c).**

Both Trustee and Creditors seek dismissal under § 1307(c).  Section 1307(c)

provides that the bankruptcy court may convert or dismiss a chapter 13 case, depending

on the best interests of the creditors and the estate, for any of eleven enumerated

circumstances.  While not specifically listed, courts have held that bad faith constitutes

"cause" for dismissal under § 1307(c).  *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470

(9th Cir. 1994).

To determine whether bad faith exists such that dismissal is appropriate, the

totality of the circumstances must be examined.  *Id.; see also Leavitt v. Soto (In re*

*Leavitt)*, 171 F.3d 1219, 1224 (9th Cir. 1999).  This includes consideration of the

following factors:

> (1) whether the debtor misrepresented facts in his [petition or] plan,
> unfairly manipulated the Bankruptcy Code, or otherwise [filed] his Chapter
> 13 [petition or] plan in an inequitable manner;
>
> (2) the debtor's history of filings and dismissals;
>
> (3) whether the debtor only intended to defeat state court litigation; and
>
> (4) whether egregious behavior is present.

*Leavitt*, 171 F.3d at 1224 (alterations in original and citations omitted).  A finding of

malice or actual fraud is not required.  *Id*.

Here, all four factors support finding cause for dismissal.  Debtors have

misrepresented facts in their schedules, unfairly manipulated the Bankruptcy Code, and

filed their plan in an inequitable manner.  Debtors' representations in their schedules

regarding the Real Property are not consistent with the judgment entered by the State

MEMORANDUM OF DECISION - 6

Court and the effect of the completed sheriff's sale. Debtors are not the owners of the

Real Property. Creditors own the Real Property as they were the successful bidders at the

sheriff's sale completed prior to the Second Bankruptcy. Debtors argue there were

irregularities that invalidate the sheriff's sale. However, even if Debtors are correct that

the sheriff's sale is somehow invalid, it would still be improper for Debtors to list

Creditors as unsecured with a disputed debt. The State Court's judgment, entered before

the First Bankruptcy, provided that Creditors held a first priority deed of trust

encumbering the Real Property.

Additionally, Debtors received a discharge in their First Bankruptcy, calling into

question their need to file this bankruptcy case to reorganize their debts. When asked

why this chapter 13 filing was necessary given the prior chapter 7 discharge, Steven

Larsen indicated a desire to keep the Real Property or perhaps sell it voluntarily to pay

some of the debts discharged in the First Bankruptcy. However, Debtors did not attend

their § 341(a) first meeting of creditors in this case. They also failed to attend a § 341(a)

meeting of creditors in the Second Bankruptcy. The initial failure may be overlooked as

a misunderstanding or oversight by *pro se* litigants, but the failure to attend the required

§ 341(a) meeting of creditors in this case, after the necessity of such attendance was made

clear to Debtors in the dismissal of the Second Bankruptcy, calls into question how

serious Debtors are in reorganizing their debts.

The Court must also consider Debtors' history of filings and dismissals. Debtors'

First Bankruptcy halted Creditors' efforts to conduct a sheriff's sale due to the imposition

of the automatic stay. Debtors received a chapter 7 discharge. That case remains open

MEMORANDUM OF DECISION - 7

due to a pending motion for contempt filed by Debtors against Creditors.  Debtors filed

the Second Bankruptcy days after Creditors completed the sheriff's sale and attempted to

gain possession of the Real Property.  Debtors did not timely file a plan or attend the

§ 341(a) first meeting of creditors, and the Second Bankruptcy was dismissed.  Within

days of the dismissal of the Second Bankruptcy, Debtors filed the Third Bankruptcy.

Debtors again failed to attend the required § 341(a) first meeting of creditors and have yet

to confirm a plan.  This history supports a finding of bad faith.

Next, it appears Debtors filed the Third Bankruptcy to defeat state court litigation.

Debtors seek the protection of the automatic stay to thwart Creditors state court eviction

efforts but have not successfully prosecuted their bankruptcy cases to reorganize their

debts or pay creditors.  In examining the totality of the circumstances, it is clear Debtors

are attempting to capitalize on the advantages of the bankruptcy system, most notably the

automatic stay, to frustrate Creditors' actions in State Court, while at the same time not

actually paying creditors or reorganizing debts.

Finally, the Court finds Debtors' behavior is egregious.  As with the debtor in

*Leavitt*, Debtors here offer no rational justification for their actions.  Rather, Debtors'

clear intention is to use the bankruptcy system to avoid eviction following a state court

foreclosure and sheriff's sale.  The Ninth Circuit Court of Appeals has found such actions

constitute egregious behavior.  *See Leavitt*, 171 F.3d at 1225–26.  As such, when

considering the totality of the circumstances, the Court finds that bad faith exists.

MEMORANDUM OF DECISION - 8

In sum, the record before the Court provides a sufficient basis for dismissal of

Debtors' Third Bankruptcy.  Therefore, Trustee's and Creditors motions to dismiss under

§ 1307(c) will be granted.

### C.       Bar to Refiling under § 349(a)

In addition to dismissal, Trustee and Creditors have asked the Court to impose at

least a six-month bar to refiling under § 349(a).[4]  Given the prior discussion, a bar to

refiling would be appropriate but is ultimately unnecessary.

### 1.       Future Application of the Automatic Stay

For repeat filers who have had two bankruptcy cases pending but dismissed within

the year preceding the filing of a third case, the automatic stay "shall not go into effect

upon the filing of the later case."  Section 362(c)(4).  Thus, in contrast to this case, where

the automatic stay went into effect but terminated on the thirtieth day after the petition

date or upon the Court denying the motion for an extension as to Creditors and the Real

Property, for a subsequent filing within a year of the dismissal of their Second

Bankruptcy and this Third Bankruptcy, the stay would not go into effect at all.  *Reswick*

*v. Reswick (In re Reswick)*, 446 B.R. 362, 372 (9th Cir. BAP 2011) (noting that Congress

---

[4] The Court may enter a bar under § 349(a):

> Section 349(a) is not ambiguous, and plainly provides that the bankruptcy court may, at
> its discretion and for cause, bar the discharge of existing debt. Inherent in this authority is
> the power to bar subsequent bankruptcy petitions that seek to discharge such debt.

> Furthermore, cases which have looked to the legislative history of § 349 note that it was
> intended to provide courts with authority to control abusive filings "beyond the limits of
> § 109(g)," even in cases where the bankruptcy court enjoined the filing by a debtor of any
> case under Title 11 for a period greater than 180 days.

*Leavitt v. Soto (In re Leavitt)*, 209 B.R. 935, 942 (9th Cir. BAP 1997), *aff'd*, 171 F.3d 1219 (9th Cir.1999)
(internal citations omitted); *see also In re Hieter*, 414 B.R. 665, 673 (Bankr. D. Idaho 2009).

MEMORANDUM OF DECISION - 9

intended the consequence of repeat filings to be more severe as the number of successive

filings increase).  As it appears Debtors' aim in filing is to take advantage of the

automatic stay, the provisions of the Bankruptcy Code already provide an effective

deterrent to subsequent filings in the near future.

### 2.      Future Eligibility

Moreover, the Court concludes Debtors will be ineligible to file another

bankruptcy case for 180 days under § 109(g)(1).[5]  The Court previously set out the

standard to determine willfulness under § 109(g) in analyzing Debtors' actions in the

Second Bankruptcy.  While Debtors' actions in the Second Bankruptcy alone were

insufficient to constitute willful failures given their lack of familiarity with the chapter 13

process, the same cannot be found in their Third Bankruptcy.  As recognized in *Walker*,

231 B.R. at 348, "repeated conduct strengthens the inference that the conduct was

deliberate."

Upon filing their Third Bankruptcy, Debtors were aware of the requirement to

attend their § 341(a) meeting of creditors and the consequences for failing to appear.

Thus, the Court concludes Debtors' second failure to appear at the required § 341(a)

meeting of creditors in the Third Bankruptcy constitutes a willful failure under

§ 109(g)(1).  As such, Debtors are ineligible to refile bankruptcy for 180 days upon

---

[5] While the Court in dismissing a case normally has no reason to perform a § 109(g)(1) analysis, it is appropriate here in determining if a dismissal with a six-month bar to refiling under § 349(a) is necessary.  *See In re Blele*, 2003 WL 25273798 (Bankr. D. Idaho Aug. 13, 2003) (noting that, as a general practice, a court does not make willfulness determinations in dismissing a bankruptcy case but rather upon the filing of a subsequent case).

MEMORANDUM OF DECISION - 10

dismissal of this case, and a § 349(a) bar to refiling is unnecessary.  Thus, Trustee's and

Creditors' request for the same will be denied.[6]

**CONCLUSION**

For the reasons set forth above, the Court will dismiss this bankruptcy case for

cause under § 1307(c) but without a bar to refiling as such bar is unnecessary.  The Court

will enter its own order consistent with this decision.

DATED:  June 23, 2023



_____
NOAH G. HILLEN
U.S. Bankruptcy Judge

---

[6] To be clear, had the Code not provided sufficient relief under § 109(g)(1) and § 362(c)(4), the Court would have imposed a six-month bar to Debtors filing a bankruptcy petition without the assistance of an attorney as Debtors have been unable to effectively prosecute their prior two chapter 13 bankruptcy cases *pro se*.

MEMORANDUM OF DECISION - 11